O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ENRIQUE TORRES, ) | NO. EDCV 13-0559-MAN |
| Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION |
| CAROLYN W. COLVIN, ) | AND ORDER |
| Acting Commissioner of Social Security, ) | |
| Defendant. ) | |

Plaintiff filed a Complaint on March 26, 2013, seeking review of the denial of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (ECF No. 1.) On April 23, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 9.) The parties filed a Joint Stipulation on December 4, 2013, in which plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. (ECF No. 13.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed applications for DIB and SSI on July 10, 2009, and March 18, 2010, respectively. (Administrative Record ("A.R.") 281-84, 285-87, 288, 289-96.) Plaintiff, who was born on February 9, 1964 (*id.* 18),[1] claims to have been disabled since February 23, 2009 (*id.* 10), due to "Crohn[']s disease, ulcer active colitis, anxiety disorder, [and] high blood pressure" (*id.* 332). He also claims that his reading and comprehension are poor, he needs to use the restroom frequently, he is weak, when he is weak he has to eat constantly, he becomes easily overwhelmed, and his sister prepares his medication for him. (*Id.*) Plaintiff has past relevant work experience as a groundskeeper, newspaper inserter, and security guard. (*Id.* 18.)

After the Commissioner denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing. (A.R. 152-54.) On December 13, 2010, plaintiff, who was represented by a non-attorney representative, appeared and testified at a hearing before Administrative Law Judge Sharilyn Hopson ("ALJ Hopson"). (*Id.* 28-63, 221-22.) On February 3, 2011, ALJ Hopson denied plaintiff's claim (*id.* 100-14), finding that plaintiff retains the capacity to perform a reduced range of light work, including the jobs of order clerk, small items assembler, and production inspection and checker, and therefore he is not disabled (*id.*).

On February 14, 2012, the Appeals Council vacated ALJ Hopson's decision, finding that: (1) ALJ Hopson's determination of plaintiff's residual functional capacity ("RFC") did not reflect her finding of a severe mental impairment resulting in moderate limitations in concentration, persistence, or pace; (2) ALJ Hopson failed to assign specific weight to the opinion of treating physician Victor Meceda, M.D.[2]; (3) ALJ Hopson failed to discuss the opinion of treating physician

---

[1] On the date his first application was filed, plaintiff was 45 years old, which is defined as a younger individual. (*See* 20 C.F.R. §§ 404.1563(c), 416.963(c); A.R. 18.)

[2] Dr. Meceda's name is alternatively spelled in the ALJ's opinion as Maceda. The Court will use "Meceda," as this appears to be the accurate spelling.

Asthma Jafri, M.D.; and (4) a September 12, 2011, statement from Elliot Joo, M.D.,[3] received by the Appeals Council after the hearing, needs to be considered on remand. (*Id.* 120-21.)

On June 1, 2012, plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Mark B. Greenberg (the "ALJ"). (A.R. 64-93, 271.) Vocational expert Ronald K. Hatakeyama ("the VE") also testified. (*Id.* 10, 85-93.) On June 15, 2012 the ALJ denied plaintiff's claim (*id.* 10-20), and on January 30, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision (*id.* 1-6). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In his June 15, 2012, decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, and has not engaged in substantial gainful activity since February 23, 2009, the alleged onset date of his disability. (A.R. 12.) The ALJ determined that plaintiff has the severe impairments of obesity, Crohn's disease, pyoderma gangrenosum, and obstructive sleep apnea. (*Id.*) The ALJ also determined that plaintiff has the medically determinable mental impairments of depression and anxiety, but these impairments are nonsevere because they "cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area." (*Id.* 14.) The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (*Id.*)

---

[3] It is difficult to ascertain the proper spelling from Dr. Joo's signature on medical records, (A.R. 1077), but the website for California Medical Board licenses lists only a Dr. Elliot Joo. There is no entry for Dr. Elliot Juo. The Court will assume that the California Medical Board's spelling is correct and refer to Dr. Joo.

After reviewing the record, the ALJ determined that plaintiff has the RFC to perform sedentary work with the following nonexertional limitations: requires a sit/stand option; requires a cane for ambulation; occasional postural activities[4] except no climbing of ladders, ropes, scaffolds, being around work hazards, and balancing; unable to walk on uneven terrain; requires a clean air environment with no exposure to lung irritants; and requires ready access to restroom facilities. (A.R. 14.) In making this finding, the ALJ considered the subjective symptom testimony of plaintiff, which the ALJ found was not entirely credible,[5] as well as the medical evidence and opinions of record. (*Id.* 14-18.)

Based on plaintiff's age, education,[6] work experience, and RFC, as well as the testimony of the VE, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform," including the jobs of addresser, table worker, and information clerk.[7] (A.R. 19.)

Thus, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since February 23, 2009, the alleged onset date, through June 15, 2012, the date of the ALJ's decision. (A.R. 20.)

---

[4] Postural activities involve climbing, stooping, kneeling, crouching, crawling, and reaching.

[5] Plaintiff does not dispute the ALJ's credibility determination.

[6] The ALJ determined that plaintiff "has a limited 11th grade education and is able to communicate in English." (A.R. 18 (citations omitted).)

[7] The VE testified that the DOT number for the position of "information clerk" was 237.367-014 -- a sedentary job with a specific vocational preparation of 2, signifying an unskilled job. However, the job corresponding to this DOT number is titled "call-out operator." DOT No. 237.367-014. This job is also a sedentary job with a specific vocational preparation of 2, signifying an unskilled position. (A.R. 19, 92.) Because the VE also identified two other sedentary jobs that exist in significant numbers in the local and national economies, the Court finds that the error in misidentifying this job, if any, was harmless. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (harmless error rule applies to review of administrative decisions regarding disability)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citations omitted).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630 (citing Connett, 340 F.3d at 874).  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges that the ALJ erred in rejecting the functionality assessments of treating physicians Drs. Meceda, Jafri, and Joo. (Joint Stip. at 7, 14.) Specifically, he argues that the ALJ's rationales for rejecting significant portions of their opinions were not specific and legitimate. (*Id.*)

**I.   Legal Standard.**

An ALJ is obligated to take into account all medical opinions of record. 20 C.F.R. § 416.927(b). It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant. Magallanes, 881 F.2d at 751. When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When, as here, it is contradicted by another doctor, a treating or examining physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*; *see also* Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Orn, 495 F.3d at 632.

**II.   The ALJ Properly Discounted The Functionality Assessments Of Plaintiff's Treating Physicians.**

A. <u>Dr. Meceda</u>

On May 24, 2010, Dr. Meceda completed a Physical Capacities form in conjunction with plaintiff's state disability claim. (Joint Stip. at 14; A.R. at 697-701.) In that form, he estimated that plaintiff could sit for up to two hours in an eight-hour workday and stand/walk for up to two hours at a time but for a total of no more than four hours a day. (A.R. 697.) Dr. Meceda indicated that: plaintiff's medication causes him to use the bathroom every three to four hours; he has arthritis secondary to Crohn's disease that would restrict use of his hands/fingers and feet for repetitive motions; and he is allergic to dust and cannot tolerate changes in temperature. (*Id.*) He also opined that plaintiff could occasionally balance but could never lift or carry ten pounds and could never engage in postural activities. (*Id.* 698.) Dr. Meceda noted plaintiff's medications cause him to go to the bathroom frequently and make him drowsy "but relieve his pain." (*Id.*)

The ALJ gave "great weight" to the portion of Dr. Meceda's 2010 assessment relating to the stand/walk/sit findings, as well as to the environmental restrictions "such as exposure to dust and heights," and incorporated these findings into the RFC by providing for a sit/stand option and "restrictions against exposure to lung irritants and climbing ladders, ropes and scaffolds (heights)." (A.R. 17.) The ALJ also stated the following with respect to Dr. Meceda's opinion:

> It is unclear from the evidence as to why the claimant would be restricted in [postural activities]. As discussed in the prior decision, Dr. [Meceda] makes a diagnosis of arthritis as precluding using the hands/fingers and feet, but this is not supported by the objective evidence and contrasts sharply with the examination of Dr. Girgis[8] which recorded an entirely unremarkable musculoskeletal examination.

---

[8] Dr. Bahaa Girgis, M.D., a doctor of internal medicine, performed a consultative examination of plaintiff on October 30, 2009. (A.R. 597-602.) The examination included physical and neurological examinations of plaintiff and diagnostic blood tests. (*Id.*)

> The consultative examination also found good mobility in the claimant's spine and joints throughout the upper and lower extremities and would, in this regard, also contradict the reported manipulative as well as postural restrictions. The claimant's own descriptions of his activities that he is able to attend to self care independently, shop, drive an automobile, cook and build model cars also seemingly exceed the restrictions as reported by Dr. [Meceda], particularly in regard [to] the preclusions against use of the hands. Therefore, the Administrative Law Judge assigns no weight to that portion of his assessment which finds greater degree of restriction than as assessed herein.

(*Id.* (citations omitted).)

Thus, the ALJ rejected only Dr. Meceda's opinion that plaintiff's arthritis precluded the repetitive use of his hands and feet[9] and that plaintiff was completely unable to lift and carry. The ALJ cited three reasons for rejecting these limitations: (1) they had no support in the records from Dr. Meceda; (2) Dr. Girgis' consulting examination found no evidence of musculoskeletal restrictions; and (3) these limitations were inconsistent with plaintiff's activities of daily living.

Plaintiff concedes that there is nothing in Dr. Meceda's treatment records "that would specifically support the arthritis diagnosis," but he contends that this was not an adequate basis for rejecting Dr. Meceda's opinion of plaintiff's limitations because Dr. Meceda provided "no treatment notes or tests at all." (Joint Stip. at 15.) Plaintiff contends that, because there was no supporting evidence of any kind from the treating source, the ALJ should have contacted the doctor for further information instead of assuming that it did not exist. (*Id.*) Plaintiff also argues that the ALJ should have found Dr. Meceda's opinions supported by plaintiff's testimony that he

---

[9] None of the descriptions for the three jobs suggested by the VE indicate *repetitive* hand or foot motion is required. *See, e.g.*, DOT Nos. 209.587-010, 739.687-182, 237.367-014.

had difficulty *grasping* with his hands and that arthritis is a "highly common complication of inflammatory bowel disorders such as Crohn's [d]isease." (*Id.* (footnote omitted).)

The Court does not agree that the ALJ was under an obligation to obtain additional records from Dr. Meceda. Although a claimant bears the burden of proving disability, the ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). However, this duty is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150). In this case, there were no ambiguities in the record that needed clarification -- the voluminous longitudinal record simply contains no support for Dr. Meceda's extreme manipulative limitations -- and there is no other record evidence, including, as discussed in more detail below, plaintiff's own testimony, that supports those limitations. Tonapetyan, 242 F.3d at 1149 (ALJ may discredit treating physicians' opinions that are not supported by objective medical findings).

Moreover, in her February 3, 2011 decision, ALJ Hopson also noted this same lack of support in Dr. Meceda's records for these purported limitations. (A.R. 110.) Despite the fact that more than 16 months elapsed between ALJ Hopson's decision and the subsequent hearing, plaintiff and his counsel neither obtained relevant records from Dr. Meceda nor identified any additional evidence that the ALJ could have obtained from Dr. Meceda to support these limitations. Plaintiff has not provided any evidence demonstrating that the arthritis limits his ability to use his fingers to manipulate objects[10] -- as noted herein, even his own testimony is to the contrary.

---

[10] The Court again notes that Dr. Meceda only restricted plaintiff from using his hands/fingers and feet for *repetitive* motions. (A.R. 697.)

9

In short, the detailed and extensive medical records did not include any reference to a disabling arthritic condition sufficient to put the ALJ on notice that the record might need to be augmented. Accordingly, plaintiff has failed to establish that the ALJ's duty to develop the record was triggered.

Nor is there objective evidence in the records from Riverside County Regional Medical Center, where Dr. Meceda had his practice, to support Dr. Meceda's extreme limitations. (A.R. 488-596, 636-90, 699-820; 847-1070, 1090-1183.) The Court's review of the voluminous treatment notes from this facility reflect only occasional mentions of arthritis or nonspecific "joint pain" and no complaints of finger, hand, or foot pain.

For instance, a September 12, 2011 treatment note mentions a history of arthritis, but that note appears to relate to plaintiff's complaint that he cannot stand for "long hours due to hip/leg pains." (A.R. 1100-01.) Similarly, an April 13, 2011 clinic note states that plaintiff is seeking disability on the limited basis of Crohn's disease and "DJD [degenerative joint disease] of knee causing pain and decreased ability to ambulate." (*Id.* 1120.) That note also indicates that the DJD was "first documented in chart on 2/26/10 on DMV disabled persons placard in which pt was given a permanent placard. Subsequent documentation on 5/24/10 for disability documentation request [illegible] stating arthritis 2/2 Crohn's disease and on 12/10/10 for further disability documentation request." (*Id.*) The Court is unable to find the documents referred to in this note. In treatment notes dated November 4, 2009, and May 7, 2010, there is a reference to "joint pain" with no further explanation. (*Id.* 640, 1171.) Finally, a treatment note for a December 10, 2010 office visit states: plaintiff was "here to have disability paperwork for SSI hearing next week"; "Pt walks with cane -- unable to ambulate beyond few feet"; and "DJD -- knees." (*Id.* 1137-38).

In sum, the few documents that mention joint pain refer primarily to an issue with plaintiff's knees, and the ALJ took these documents into account when he limited plaintiff to sedentary work, use of a cane for ambulating, and a preclusion from walking on uneven terrain. The Court

finds nothing in the record to support Dr. Meceda's limitations relating to plaintiff's alleged extreme difficulties with repetitive hand or foot movements; no specific treatment notes, lab reports, x-rays, MRIs, or other documents corroborate those limitations.

Additionally, treatment notes from the Riverside County Regional Medical Center reflect that plaintiff's Crohn's disease was well controlled by medication, and he ceased to have severe flare ups requiring hospitalization.[11] For example, on June 22, 2009, plaintiff reported intermittent abdominal pain, that his pain was controlled by medication, and that he had only occasional diarrhea -- one to two times per week -- with no blood (A.R. 672, 674); on July 29, 2009, he reported no acute issues and that his abdominal pain was occasional (*id.* 667); on October 19, 2009, he reported having abdominal pain three to four days a week lasting about 40 minutes and three to four loose stools per day (*id.* 642), but on October 30, 2009, he told the consulting examiner that his last "flare up" was in September 2008 (*id.* 598); in February 2010, plaintiff

---

[11] In the Joint Stipulation, plaintiff alleges that he record shows his Crohn's disease was not well controlled by medication because, over the three year period between 2009 and 2012, he presented complaining of diarrhea, bloody stool, abdominal pain, dizziness, or weakness on 29 occasions and made four trips to the hospital emergency room for severe complications of Crohn's disease, such as anemia, hypokalemia, dehydration, and malnutrition. (Joint Stip. at 19-20.) A careful review of the record reveals, however, that plaintiff's assertion is a gross exaggeration. Two of the instances cited by plaintiff occurred before plaintiff was diagnosed with, and began treatment for, inflammatory bowel disease. (*See e.g.*, A.R. 440-41 (treatment on 2/24/09 for lightheadedness, mild hypokalemia, and mild anemia; plaintiff attributed symptoms to failing to eat), 437 (3/1/09 - plaintiff presented with a rash, bloody stool, and hypokalemia).) Similarly, two of plaintiff's four alleged emergency room visits occurred within a week of his diagnosis. (*See* A.R. 729, 734 (admitted to the hospital on 3/3/09, diagnosed with ulcerative colitis, and discharged on 3/6/09), 494-504 (readmitted to hospital on 3/10/09).) Moreover, at several of the appointments cited by plaintiff, he reported that his treatment seemed to be effective. (*See e.g.*, A.R. 673 (6/22/09 - diarrhea sometimes but not everyday and no blood in stool), 667 (7/29/09 - plaintiff "feels okay" with only occasional pain), 642 (10/19/09 - medications are effective at managing plaintiff's pain level), 640 (11/4/09 - pain medication was helping and plaintiff was experiencing "no other acute issues"), 851 (4/28/12 - symptoms are "well controlled"), 1157 (7/13/10 - no blood in stool, no diarrhea indicated), 1151-53 (9/23/10 - no diarrhea indicated), 992 (12/20/10 - experienced only a "'minor' flare up" following the death of plaintiff's sister), 990 (3/11/11 - plaintiff is "stable on Asacol and Vicodin"), 1118 (6/6/11- "pain medications helping with pain" although plaintiff experiences 4-5 bowel movements on bad days).) Finally, and perhaps most tellingly, according to the portions of the record cited by plaintiff, he only had one flare up in 2011, the last full calendar year for which the court has plaintiff's treatment records, and it did not require hospitalization. (*See* A.R. 1100 (9/12/11 - experienced a flare up two weeks prior, lasted for three days).)

11

reported "no acute symptoms (*id.* 685, 714), and stated that his Crohn's disease [was] stable (*id.* 687); in June 2010. he was "stable" (*id.* 700), and his Crohn's was under "good control on current medication" (*id.* 1170); on December 20, 2010, plaintiff reported his symptoms and pain were controlled with medication, there had been "no flare up since February 2010," and the current bout might have resulted from stress and anxiety over the recent loss of his sister from cancer (*id.* 992-93); in March, April. and July 2011, the progress notes state that plaintiff was stable on medications (*id.* 990, 1106, 1120); in August 2011, his Crohn's was "stable" (*id.* 1102); in September 2011, plaintiff reported "he has been feeling better[;] [h]e wants his disability paperwork filled" (*id.* 1100); and on September 12, 2011, Dr. Joo reported that plaintiff's pain was controlled with medication, he could tolerate moderate work-related stress, and he would be absent from work less than once a month (*id.* 1073-75).

An ALJ may properly discount a treating physician's opinion that is not supported by the medical record, including his own treatment notes. <u>Valentine v. Comm'r, Soc. Sec. Admin.</u>, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion); <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by . . . objective medical findings"); <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ permissibly rejected treating physician's opinion when opinion was contradicted by or inconsistent with treatment reports). Because the treatment records from Dr. Meceda's clinic do not support his opinions, this was a specific and legitimate reason for discounting those opinions.

Next, the ALJ noted that Dr. Girgis' consulting examination "recorded an entirely unremarkable musculoskeletal examination." (A.R. 17.) On October 30, 2009, Dr. Girgis performed a complete physical examination and found no musculoskeletal problems (*id.* 597-600), and reported nothing significant enough to cause any manipulative or lifting limitations. Indeed, Dr. Girgis noted that plaintiff's grip force was 20-20-20 pounds and 20-20-25 pounds in his right

and left hands respectively. (*Id.* 599.) Similarly, Dr. Landau, testifying at the first hearing, stated that, although arthritis is a complication of the ulcerative colitis condition, he had searched the record for any evidence of arthritis and was unable to find any.[12] (*Id.* 40.) An ALJ may discredit a treating physician's opinion when it is unsupported by the record as a whole. Batson, 261 F.3d at 856. An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings. Orn, 495 F.3d at 631. Thus, Dr. Girgis' opinion provided a specific and legitimate reason for discounting Dr. Meceda's opinions.

Finally, the ALJ observed that plaintiff's activities of daily living, including his ability "to attend to self care independently, shop, drive an automobile, cook and build model cars" were inconsistent with Dr. Meceda's limitations in that they "seemingly exceed" the restrictions reported by Dr. Meceda, "particularly in regard [to] the preclusions against use of the hands." (A.R. 17.) Plaintiff himself testified at the first hearing that although he had trouble grasping and lifting heavier items, such as a milk jug, he had no trouble putting together the models he makes as a hobby. (*Id.* 49-50.) Plaintiff testified that he can "use [his hands] doing little things," and while his hands "don't hurt" doing this, his fingers "just get tired of, you know folding . . . ." (*Id.* 51.) Similarly, at the more recent hearing, plaintiff was asked by his attorney and the ALJ about physical symptoms that keep him from being able to work, and he did not mention any hand or foot manipulative limitations. (*Id.* 69-79, 84-85.) Instead, plaintiff testified that he plays dominos and cards, activities which would seem to require some degree of manual dexterity. (*Id.* 85.) Inconsistency between a treating physician's opinion and a claimant's daily activities may be a specific and legitimate reason for rejecting the opinion. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Rollins, 261 F.3d at 856. Thus, there was no error.

### B. Dr. Jafri

---

[12] The records reflecting DJD and/or arthritis were not in evidence for Dr. Landau to review at the first hearing. (*See* A.R. 31 (admitting only exhibits through 16F into the record).)

On December 10, 2010, Dr. Jafri completed a Multiple Impairments Questionnaire. (A.R. 839-46; Joint Stip at 17.) In that form, she noted plaintiff's diagnoses of Crohn's disease, obesity, hypertension, and sarcopenia, finding that plaintiff's prognosis was "poor." (A.R. 839.) She also assessed that in an eight-hour workday, plaintiff could sit for a total of three to four hours (*id.* 841); stand/walk for one hour (*id.*); would need to get up and move around once or twice in an eight-hour period for fifteen minutes before sitting down again (*id.* 841-42); could lift up to ten pounds occasionally and five pounds frequently (*id.* 842); and has "marked" limitations in the ability to perform gross and fine manipulation and to reach. (*Id.* 842-43.) She also found that: plaintiff's symptoms would "constantly" interfere with his attention and concentration (*id.* 844); he would be incapable of even a low stress work environment (*id.*); he would need to take unscheduled breaks at least once an hour for 15 minutes at a time (*id.*); and he would be absent from work more than three times a month. (*Id.* 845.)

The ALJ, adopted "some aspects of the opinion . . . to the extent it is consistent with the residual functional capacity for work as determined" in his decision and further stated the following with respect to Dr. Jafri's opinion:

> This [adoption of some aspects of Dr. Jafri's opinion] is particularly in regard to Dr. Jafri's assessment that the claimant has the ability to lift 10 pounds occasionally and carry 5 pounds frequently; that it was necessary for him not to sit continuously in a work setting, and that he should avoid heights. H[er] reporting[,] as to the claimant being unable to sit for more than 3 to 4 hours total during the day, stand/walk for more than 1 hour total during the day, that he was essentially precluded from using the upper extremities, and the other postural restrictions[,] [is] excessive and given no weight in light of the objective findings in the treatment records from Riverside County Medical Center, the examination of Dr. Girgis, the nature of and response to [plaintiff's] treatment with medications, and the extent

of the claimant's daily activities.

(*Id.* 17.)

Thus, the ALJ rejected Dr. Jafri's extreme limitations for the same reasons he rejected Dr. Meceda's extreme limitations, *i.e.* lack of objective support, conflict with Dr. Girgis' findings, and the extent of plaintiff's daily activities, but also because plaintiff had responded positively to treatment. For the same reasons discussed above, including the Court's discussion of the evidence that plaintiff's medication was controlling his Crohn's disease and/or pain, the Court finds there was no error in the ALJ's discounting of Dr. Jafri's opinion.

      C.    Dr. Joo

On September 12, 2011, Dr. Joo completed a Gastrointestinal Disorders Impairment Questionnaire. (A.R. 1072-77; Joint Stip. at 20.) He noted plaintiff's diagnoses of Crohn's disease and the clinical findings of chronic diarrhea, blood in stool, abdominal pain and cramps, pain, and aphthous ulcers. (A.R. 1073.) He also noted the following: plaintiff's pain was controlled with Ibuprofen or Vicodin; emotional factors contribute to plaintiff's symptoms and functional limitations; plaintiff would periodically experience pain, fatigue, or other symptoms that would interfere with attention and concentration; plaintiff was capable of tolerating moderate work stress; plaintiff could sit for four hours in an eight-hour day; he could stand/walk for two hours in an eight-hour day; he would be able to sit continuously in a work setting but must get up and move around with a cane once an hour for 15 to 20 minutes; he could occasionally lift or carry up to five pounds, and never lift or carry anything over five pounds; he would be absent from work less than once per month; and he would need ready access to a restroom, up to eight times a day for ten minutes at a time. (*Id.* 1073-77.)

The ALJ noted that his RFC finding was consistent with Dr. Joo's assessment that plaintiff

would need to get up and move around after one hour of sitting and needed to use a cane to walk. (A.R. 18.) However, he gave "minimal weight" to the other limitations in Dr. Joo's assessment "in light of the lack of reported restrictions in sitting in the function reports at Exhibits 3E and 5E and the treatment records which describe the flares of the Crohn's disorder with symptoms of pain and diarrhea to a lesser extent." (*Id.*)

Again, the ALJ's reasons for discounting Dr. Joo's opinions were similar to his reasons for discounting the opinions of Dr. Meceda and Dr. Jafri. As discussed, the record confirms that although plaintiff's Crohn's disease intermittently "flares up," it is well controlled with medication. Moreover, although Dr. Joo reported that plaintiff would need to use the restroom up to eight times per day, plaintiff reported in in June 2010 that he was only experiencing "two bowel movements a day." (A.R. 713.) In October 2009, he also reported to Dr. Girgis that his condition was well controlled. (*Id.* 623.) The ALJ thus provided specific and legitimate reasons for discounting Dr. Joo's opinions, and there was no error.

**CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error.  Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: August 25, 2014

*Margaret A. Nagle*
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE